•Kinkead, J.
This is a proceeding in error from the probate court. Julia C. Belle, mother, brought proceedings in habeas corpus in the probate court to obtain the custody of her child.
The claim is that the probate court of this county was without jurisdiction. The child was in the custody of its paternal grandmother who resided in Athens county. The custody of the child was legally vested in the father by a Missouri court decree in divorce. The father placed the’ child in .the care and control of its grandmother, Catherine Wolfe, the respondent below.
The writ of habeas corpus was directed to the sheriff of Franklin county, who made return that he "served the within named Catherine Wolfe by handing a * * * copy * * * at her home in Jacksonville, Athens county, etc.” * # *
Catherine 'Wolfe, respondent, filed a motion to dismiss the action for want of jurisdiction. To obtain jurisdiction over the respondent and child by habeas corpus it is contended that the *114 proceeding should have been commenced in Athens county, where both child and respondent resided.
Counsel for respondent in error contends that as habeas corpus is regarded as essentially a civil action (Henderson v. James, 52 O. S. 542), provisions of General Code concerning venue, Tit. 4, Div. 2, ch. 3, apply; that Sections 11268-11276 do not apply, but that Section 11277 governs. The latter section of the Code provides that:
“Every other action must be brought in the county in which a defendant resides or may be summoned, except actions against an executrix, etc.” * * *
We go back to the pages of legal history to obtain light upon the subject.
Section 604 of the original 1851 Code provided that,
“until the Legislature shall otherwise provide this code shall not affect proceedings on habeas corpus, quo warranto, or to assess damages for private property taken for public uses * * * (and other special statutory proceedings enumerated) * * * nor any special statutory remedy' not heretofore obtained by action.
“The design of the code as shown in Section three,” said the codifying commissioners, “and in all its parts, is to furnish one civil action, which shall take the place of all the actions at law, and all suits in equity. There are many proceedings in courts, which are not commenced by any of the actions at law, or by the common law bill in chancery. These proceedings are not ordinary, but special, and the action of the Code does not take their place, or supplant them. It only tabes the place of actions at law and suits in equity.” (Quoted in Ohio Civil Trials, Ch. X-a, Section 289-i, being new matter inserted in the volume after all copies off the press had been consumed.)
Section 605 of the 1851 Code further provided that if a civil action be given by statute, and the mode of proceeding is prescribed, the same was not to be affected by the new code “until the Legislature shall otherwise provide.”
The pertinent question in this historical retrospect is the matter of “the mode of proceeding prescribed” in habeas corpus. A new mode was prescribed by the Code of 1851 for the new *115 civil action which it created; any existing remedy was not to be affected by the civil code, unless or “until the Legislature shall otherwise provide.” The Legislature never otherwise provided any other way of commencing habeas corpus than bv issuance of the writ. The civil code of 1851 made provision that rights of action given by it or secured by existing laws were to be prosecuted in the manner by it provided (Section 603 Original Code, 51 O. L., 161), except as provided by Section 604 thereof (51 O. L., 161).
This historical review fully shows that the statutes prescribing the venue and service of summons in the commencement of the ordinary civil action have no application whatever to oroceediugs in habeas corpus
At the time of enactment of the civil code the manner of commencing the extraordinary proceedings in habeas corpus was already regulated and governed by special provision, which has not since been changed or modified.
The act securing the benefit of the extraordinary writ of habeas corpus was enacted February 22, 1811 (29 O. L. 164; 1 S. & C. 681 et'seq.). Section 1 thereof provided,
"that if it be made to appear to the ‘judge’ or ‘judges’ that the person is detained without legal authority it shall be his duty forthwith to allow a writ of, habeas corpus; which shall be issued forthwith by the clerk * * * directed to the proper officer, person or persons who detain such prisoner.”
An amendment to the habeas corpus act was passed February 8, 1847, which added the provision which is now Section 12171, viz.:
"Section 12171. The writ may be served in any county by the sheriff of that or any other county, or by a person deputed by the court or judge.” 45 O. L., 45.
The amendment of 1847 added what is now' Section 12169 and following sections, viz.: Sections 12169 to 12180 inclusive.
The provision found in Section 12170 introduced the remedy as one to be pursued in cases of confinement, or detention by a person not an officer. In other words, since the 1847 amendmenl *116 the writ has been recognized as the appropriate remedy in controversies respecting the custody of minor children.
The expression found in 52 O. S. 259, that, "a proceeding in habeas corpus is essentially a civil proceeding and not a criminal proceeding” is of no bearing here. It is not a civil action in the same sense as is the new civil action created by the Code; it is not governed by all the incidents respecting proceedings therein as is the ordinary civil action. Some of the statutes relating to proceedings in the ordinary civil action apply and govern, but not those relating to the commencement and service of the initial process essential to bringing the same.
Habeas corpus is commenced by the filing of a petition and issuance of a writ,
"which may be served in any county, or by a person deputed by the court .or judge. ’5
The contention of counsel for respondent that Section 11277, which provides for the commencement of certain actions in the county which a defendant resides or may be summoned, is not well taken. Nor is the argument of counsel'for the petitioner sound that Section 12171 authorizing the writ .to be served in any county confers juridiction in the probate court of a county where the petitioner resides but in which neither the respondent nor the child resides.
It must be conceded that writs of process properly issued and served constitute the essential steps to confer jurisdiction. The rule is well expressed by Read, J., in Lessee v. Mooreland, 15 Ohio , on p. 444, viz.:
"A court acquires jurisdiction by its own process. If the process of the court be executed upon the person or thing, concerning which the court is to pronounce judgment, jurisdiction is acquired. The writ draws the person or thing within the power of the court. The court once having, by its process, acquired the power to adjudicate upon a person or thing, it has what is called jurisdiction. .This power of jurisdiction is only acquired by its process.”
The jurisdiction of the probate court is prescribed by statute pursuant to Section 2, Article 4, Constitution. In substance, *117 the Constitution provides that the probate court shall have “jurisdiction in habeas corpus in any county or counties, as may be provided by law. ’ ’ The words ‘ ‘ in any county or counties” were used as an enabling rather than a restrictive sense (4 O. S., 308). They have no special reference to the present question. Section 12162 is the only provision conferring jurisdiction upon the probate court.
It will be conceded that the probate court can exercise no jurisdiction outside the county; it can acquire no jurisdiction in respect to any matters committed to it except within the confined of the county.
“Jurisdiction to issue the writ is generally dependent upon the territorial jurisdiction of the court or judge.” 21 Cyc., 309.
In Re Jewett, 69 Kan., 830, it was held that the court:
“had no jurisdiction to direct the issuance of a writ to run outside its district, and that its service * * * outside such district gave the judge no jurisdiction.”
In McGowan v. Moody, 22 App. Cases (D. C.), 148, it was held that the District of Columbia had no jurisdiction in habeas corpus to inquire into the grounds of the detention of a person, not an inhabitant of the district.
An instructive opinion is found In Re Jackson, 15 Mich., 416, where a writ was not issued when the infant was beyond the jurisdiction of the court, although the custodian was within the jurisdiction; Campbell and Cooley, J. J. See People ex rel., etc., 68 N. Y. Supp., 279; Hunt v. Hunt, 94 Ga., 257.
In Simmons v. Iron & C. Co., 117 Ga., 305, 61 L. R. A., 739, the rule was recognized that a judge has no authority to issue a writ directed to a person holding another in custody beyond the territorial limits of the court.
In Re Edward Talbot, habeas corpus, 9 W. L. B., 271, the petition was filed by the mother of the child and the writ issued out of the Hamilton County Common Pleas Court. Johnston, J. in his opinion stated:
“It seems that the child was found in the custody of its father in Hancock county * * * where he and the child at the time were living or domiciled, and the body of the child having been produced before the court, the father made return *118 and answer, setting forth, in substance, that he was its father, and that he was a resident of Hancock county. ’ ’
The answer of the respondent alleged that divorce proceedings were had, and that he had been decreed the custody of the child. The mother, the petitioner, resided in Cincinnati.
Of course, the respondent submitted himself to the jurisdiction of the court.
In Ex Parte Everts, 2 Disney 33 (Gholson, J.), habeas corpus was brought in Cincinnati by the father against the mother who lived in Dayton, while she was in that city immediately after a habeas corpus case had been dismissed by the federal court, the writ having been served upon her surreptitiously before she had left the city. The court exercised its discretion and held it had no jurisdiction on account of the circumstances connected with the service.
In the course of the opinion, however, Judge Gholson made pertinent suggestions concerning the vital elements entering into jurisdiction in such cases. He stated :
“It is a right or privilge of parties not to be drawn into a forum which the law has not appointed for the adjudication of questions in which they are interested. This right, or privilege, it may be the duty of the court to protect, and this privilege should be extended to every party interested. A mother may have the right to custody of the child, even against a father, and then the child would have a reciprocal right to the care and protection of that mother. Whether these rights exist, may be a question for legal adjudication. The privilege of the forum to make that adjudication, is, it appears to me, as important to the child as to the mother. If, then, a father or a mother has the actual custody of a child, the jurisdiction in which that custody exists should properly determine whether it should continue or be changed. I cannot understand how any other jurisdiction could interfere without a disregard of the rights of the child. Any other conclusion would place the child in the position of a chattel, and its custody would be decided as a question of ownership.”
The ground upon which Gholson, J., decided the question of jurisdiction is familiar and sound. His suggestions concerning status and residence of parties are pertinent in this case and *119 may be enlarged upon. The proceeding, though ex parte, is in fact designed to operate upon and sever the control and custody which the respondent has and exercises. If, as Judge G-holson contends, service upon the mother and custodian should be had in her own forum, which was her right and privilege, how different would it have been if, as here, the writ had been issued to the sheriff of Hamilton county and served upon her at her residence and domicile in Dayton?
It must be concluded that Section 12171 authorizing the writ to be served in any county by the sheriff of that or any other county was not designed to- enable a probate court of one county to exercise jurisdiction over persons domiciled or residing in any and all other counties, regardless of their want of residence or domicile in the county where the proceeding is brought.
But the query will probably ever be present; then why was this statute enacted and what was its purpose or design? A significant fact it is that since 1847, when it was made into law, this point has never been adjudicated by a reported case. This ought to be some evidence or reason why it does not bear the construction ascribed to it by the petitioner here. We have exhausted all resources of our fertile imagination to discover what the purpose of this statute was. The writ is the exclusive method of commencing this proceeding, and it is provided that it may be served in any county by the sheriff of that or of any other county. But we do not believe it to have been intended to issue and be served in any or all the territorial forums of the other eighty-seven probate courts. Jurisdiction is conferred upon the probate court by Section 12162 and not by Section 12171.
The probate court is created by Article 4, Section 7 of the Constitution which provides that, “there shall be established in each county a probate court, etc. ’ ’ Its jurisdiction is provided for by Section 8 of Article 4, Constitution, the latter part of which authorizes “such other jurisdiction, in any county or counties, as may be provided by law.” Neither constitution nor statute provides for the exercise of jurisdiction beyond its territorial limits.
The respondent protested against jurisdiction over her, and *120 properly saved the question and did not voluntarily submit herself to the jurisdiction of the court.
Suppose the domicile and residence of the respondent was in this county, but both she and the child were making a temporary visit in Athens county, in such case service would be proper and jurisdiction of this probate court for Franklin county would be properly acquired.
The court erroneously assumed jurisdiction; judgment being in favor of the respondent it is affirmed.