### PEOPLE v TAYLOR
#### OPINION OF THE COURT

1. CRIMINAL LAW—PLEA OF GUILTY—RECORD—APPEAL AND ERROR.
   One type of request for review arising from pleas of guilty relies on facts not contained in the record; logically matters of this type must be reviewed in the trial court because it requires fresh testimony not a matter of prior record.

2. CRIMINAL LAW—PLEA OF GUILTY—RECORD—APPEAL AND ERROR.
   All cases that involve showing matters not already on the record such as cases claiming involunary pleas of guilty based on alleged beatings or inducements must first be brought in the trial court for review.

3. CRIMINAL LAW—PLEA OF GUILTY—TRIAL COURT—APPEAL AND ERROR.
   Commencing post plea review of guilty pleas in the trial court is the preferable policy as such review by motion has the advantage of giving the trial judge the opportunity to consider whether or not his prior and complained of action was correct or not, and, if not, to take necessary steps to correct it, the appellate court would receive the case similar to a trial case after the trial court had ruled on a specific exception with adversary arguments if necessary, and such review by motion at the trial court level would have the additional benefit of being brought before the original trial court without the delay and expense of initiating appellate procedures.

4. CRIMINAL LAW—PLEA OF GUILTY—APPEAL AND ERROR.
   Proper procedure requires commencing post plea review in the trial court with the exception of certain obvious cases where doing so would be futile and non-productive; where for ex-

---

REFERENCES FOR POINTS IN HEADNOTES

[1–9] 21 Am Jur 2d, Criminal Law § 495.
[10] 5 Am Jur 2d, Appeal and Error § 901.
[11] 5 Am Jur 2d, Appeal and Error § 912.

ample the basis for review has already been brought to the attention of the trial judge and he has ruled on it adversely or has on the record refused to consider it.

5. CRIMINAL LAW—PLEA OF GUILTY—WITHDRAWAL OF PLEA—CONSTITUTIONAL LAW—APPEAL AND ERROR—VACATING PLEA.

Motion in the trial court to review the taking of the guilty plea is not a substitute for defendant's constitutional appeal as a matter of right; if the trial court denies the motion to review or vacate, then the appeal as a matter of right lies if the proper steps are taken; such a motion should often obviate the necessity for an appeal as of right because the trial court in many instances will be able to correct the alleged error or vacate the plea (Const 1963, art 1, § 20).

6. CRIMINAL LAW—PLEA OF GUILTY—APPEAL AND ERROR—SUA SPONTE REVIEW.

The Michigan Supreme Court will exercise its inherent right to review *sua sponte* the acceptance of a plea of guilty although the review more properly should have begun in the trial court where the case had been argued in two courts, since previously there had been no definitive opinion from the Michigan Supreme Court on the proper practice, and since it would work an injustice on the defendant to be remanded to the trial court without consideration of the merits.

7. CRIMINAL LAW—PLEA OF GUILTY—VOLUNTARINESS—COURT RULE.

Trial court made a reasonable effort in accepting a plea of guilty in 1960 to "ascertain that the plea was freely  *  *  *  and voluntarily made, without undue influence, compulsion, or duress, and without promise of leniency" where defendant, in response to questions by the court, confirmed that the plea was free and voluntary, no one had promised him anything, no one had induced him to plead guilty, he was pleading guilty because he was guilty, and his plea was of his own free will (Court Rule No 35A [1945]).

8. CRIMINAL LAW—PLEA OF GUILTY—EXAMINATION OF ACCUSED—UNDERSTANDING PLEA.

Provision in a court rule that "the court shall examine the accused  *  *  *  and  *  *  *  shall ascertain that the plea was  *  *  *  understandingly  *  *  *  made" requires the judge to conduct such an examination as to show that what the defendant actually did was indeed a crime or otherwise he could not understandingly plead guilty, and if what he did was

actually not a crime, then if he pled guilty to it, it would not be an understanding plea (Court Rule No 35A [1945]).

9. CRIMINAL LAW—PLEA OF GUILTY—EXAMINATION OF FACTS—PRELIMINARY EXAMINATION—APPEAL AND ERROR—REMAND.

Trial court's duty, before accepting a plea of guilty, is to ascertain by its examination facts which would convince the court that indeed a crime had been committed by the defendant; such examination is not the equivalent of a legal trial but it must objectively indicate that the court had fulfilled this obligation; it is not sufficient that such facts appear in the record of the preliminary examination and where the record as presented does not show the necessary examination, the plea of guilty should be vacated and the case remanded to the trial court for appropriate proceedings.

DISSENTING OPINION

BLACK and T. E. BRENNAN, JJ.

10. APPEAL AND ERROR—DISSENT BY JUSTICE—WRITTEN REASONS FOR DISSENT—SUMMARY NEGATIVE STATEMENT OF REASON—CONSTITUTIONAL LAW.

*A Justice, when he dissents, is required to "give in writing the reasons for his dissent"; however, and since advent of the present Michigan constitution, the Michigan Supreme Court has construed and applied the quoted language as authorizing a summary negative statement of reason (Const 1963, art 6, § 6).*

11. CRIMINAL LAW—APPEAL AND ERROR—LACK OF MERIT.

*Defendant's conviction should be affirmed for lack of merit in the grounds presented where the appeal has been submitted to the Michigan Supreme Court and the trifling nature thereof fully exposed.*

Appeal from Court of Appeals, Division 2, Quinn, P. J., and McGregor and Bronson, JJ., denying application for leave to appeal from Recorder's Court of Detroit, George Murphy, J. Submitted May 6, 1971. (No. 24 April Term 1971, Docket No. 52,920.) Decided April 6, 1972.

Robert Taylor was convicted, on his plea of guilty, of breaking and entering in the daytime. Defend-

ant's motion to the Court of Appeals for superintending control, treated as an application for delayed appeal, denied. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *Jane Burgess,* Assistant Defender, for defendant on appeal.

WILLIAMS, J. Two issues are dispositive in this case. The first issue is whether review of a guilty plea must begin in the trial court before being heard in the appellate courts. The second issue is whether the trial judge in this case met the standards of Court Rule No 35A (1945), and *People* v *Barrows,* 358 Mich 267 (1959) in taking a 1960 guilty plea.[1]

The facts of the originally charged offense, breaking and entering a business place in the nighttime with intent to commit a larceny, have no significance to this case on appeal. Defendant pled guilty in Detroit Recorder's Court to a specially added count of breaking and entering in the daytime, March 14, 1960.

---

[1] If this case should be retried, then the second issue raised by the people in their appellate brief, namely was the probation revocation taken within the five-year statutory period would become pertinent. The specific issue is to what extent is the statute tolled since the revocation action did not begin until more than eight years after the original sentence and probation. See *Browning* v *Michigan Department of Corrections,* 385 Mich 179 (1971). As indicated it is believed the above issues are dispositive of this case. Pertinent facts are missing to decide this issue. However, total probation and prison time seem to exceed five years.

On March 28, 1960, defendant was placed on one year's probation plus $100 costs and $100 restitution. On April 4, 1961, after the year's probation was over, defendant's probation was extended one year to March 28, 1962, because practically nothing had been paid on the account.

On July 6, 1961, a warrant for probation violation was issued, after a notice of probation violation was presented with warrant for arrest because defendant had violated his probation conditions in two respects. Defendant had moved without notifying the Probation Department. Defendant had been named as a defendant in a robbery armed charge. Defendant stated the probation officer told him "I am going to violate you the next time you come down here with no money. So I never came back again. This was in the year 3–29–1961."

By his own admission defendant absconded to California in 1963. On December 2, 1964, he was sentenced to prison there for robbery armed and was not released until July 23, 1968.

Defendant jumped parole in California and returned to Michigan. He was soon picked up, charged with probation violation, his probation revoked and on November 14, 1968, sentenced to 4–1/2 to 5 years in prison.

Defendant *pro se* and defendant's assigned counsel filed separate pleadings. Defendant's pleadings *pro se* may be quickly disposed of. On December 20, 1968, defendant *pro se* filed habeas corpus in the Court of Appeals from Jackson prison. At the same time he requested counsel as an indigent, which was granted February 3, 1969. On February 26, 1969, he requested leave to appeal. In July, 1969, the habeas corpus writ, treated as a delayed appeal, was denied without prejudice in favor of pleadings by duly appointed counsel.

Defendant's counsel attempted to file a claim of appeal, May 23, 1969, but it was returned by the Court of Appeals Clerk May 29, 1969, with a letter advising of the pendency of an application for delayed appeal by the defendant *in propia persona* and that "a judgment of probation violation is not appealable as a matter of right", citing *Calhoun* v *Macomb County Judge,* 15 Mich App 416 (1968). (See footnote 5.) The court file shows a letter dated June 30, 1969, from defense counsel of an intention to file a supplemental writ of habeas corpus, but the actual writ seems not to have been filed.

The definitive pleadings begin with defense counsel's motion filed in the Court of Appeals March 31, 1970, for superintending control. It is based on two grounds, the failure of the court in the plea-taking to ascertain the facts of defendant's participation in the crime—Court Rule No 35A (1945), and the lack of a legal waiver of trial by jury. The people moved to dismiss on the basis first that "superintending control (mandamus) cannot be used in lieu of appeal in probation matters in which appellate courts do not interfere in the absence of flagrant violation of constitutional rights" and second "an incarceratory sentence cannot be used as a collateral attack on an unchoate and long delayed original probation order". The people filed a reply brief on the same day with the same arguments. On May 5, 1970, the people filed a supplemental brief in support of their motion to dismiss addressed to the proposition that a trial judge may amend a probation order at any time within the statutory five years plus the time the statute is tolled by an absconding probationer. On May 15, 1970, defendant's counsel filed an argumentative answer to the motion to dismiss.

On June 5, 1970, the Court of Appeals, treating the complaint for superintending control "as an appli-

cation for delayed appeal pursuant to GCR 1963, 711.4(2)", ordered such application "denied for lack of merit in the grounds presented" and consequently the motion to dismiss was denied as moot. On September 22, 1970, this Court granted leave to appeal.

## I. — *Should Review of Guilty Pleas Begin in the Trial Court?*

The question of whether review of guilty pleas should begin in the trial court appears to be one of first impression in this Court.

There are several types of requests for review which arise from pleas of guilty. One such type relies on facts not contained in the record. Often involved are allegations contradicting the voluntariness of the plea. Logically matters of this type must be reviewed in the trial court because it requires fresh testimony not a matter of prior record.

There is one order of this Court which specifies that where the voluntariness of a plea of guilty is involved requiring evidence not on the record, that case should begin in the trial court. The order of this Court in *People* v *Kenneth Carlton, Jr.,* Supreme Court No 51,240, was as follows:

"The People of the
State of Michigan,
                    Plaintiff,
      vs.          51240
Kenneth Carlton Jr.
          Defendant.

"In this cause an application is filed by defendant for leave to appeal from the order of the court of appeals denying leave to take a delayed appeal, and an answer in the nature of affidavits having been filed by plaintiff, On Order of the Court, the application for leave to appeal from the court of appeals is

considered and the same is DENIED for the reason
that no justification therefor is presented. The
cause is REMANDED to the circuit court of Bay
county to assume jurisdiction and to make a deter-
mination upon a separate record of the voluntari-
ness of the written confession and of the plea of
guilty made by petitioner on December 20, 1960. At
this hearing, after due notice to the prosecuting
attorney, the defendant Carlton may take the stand
and testify for the limited purpose of making of
record his version of the facts and circumstances
under which the confession was obtained and the
plea of guilty made. By so doing, the defendant
does not waive his right to decline to take the stand
on trial in chief, if retrial is ordered, nor does he
waive any of the other rights stemming from his
choice not to testify.

"If the trial judge, on the basis of the hearing and
record made before him, determines that the plea of
guilty was involuntarily made, he shall enter an
order vacating the sentence and the plea of guilty
and the defendant shall be rearraigned and required
to plead anew to the information. The said order
shall constitute a final judgment for purposes of
review." July 15, 1965.

In commenting on this order in *People v Carlton,*
5 Mich App 20, 23 (1966), the Court of Appeals said:

"The Supreme Court remanded the case to the
trial court to determine the voluntariness of defend-
ant's confession and his plea of guilty. The lower
court was instructed to vacate the sentence and plea
of guilty, if, after hearing, he determined that the
plea was involuntarily made. The order also pro-
vided that the order of the lower court would consti-
tute a final judgment for purposes of review."

See also *People v Horvath,* 25 Mich App 649–650
(1970): " * * * the proper forum for entertain-

ing a post-plea allegation of involuntariness not supported by the record is the trial court." *People v Dorner*, 24 Mich App 306, 308 (1970); *People v Kenny Smith*, 20 Mich App 307–308 (1969).

There are other modern cases involving the review of the voluntariness of a guilty plea with facts outside the record in which review was begun in the trial court, though the issue of where such review should begin was not raised. See *People v Rufus Williams*, 386 Mich 277 (1971); *People v Roger Johnson*, 386 Mich 305 (1971); *People v Goldman*, 245 Mich 578 (1929); *People v Williams*, 225 Mich 133 (1923); *People v Taylor*, 383 Mich 338 (1970);[2] *People v Kobrzycki*, 242 Mich 44 (1928).[3] See also *People v Bumpus*, 355 Mich 374 (1959) where there was both the question of voluntariness of the plea including allegations outside the record and the constitutional question of right to counsel. *People v Skropski*, 292 Mich 461 (1940). In *People v Vasquez*, 303 Mich 340 (1942) the motion to withdraw was largely bottomed on an affidavit that the sheriff advised "the best thing for me to do was to waive examination and plead guilty  *  *  *  my punishment would be placed on probation  *  *  *  ". (303 Mich 340, 342.)

There is little question that the old practice was to review guilty pleas by writ of error to the Supreme Court, even in the "voluntary" cases. *Edwards v People*, 39 Mich 760 (1878); *Henning v People*, 40 Mich 733 (1879); *Clark v People*, 44 Mich 308 (1880); *People v Ferguson*, 48 Mich 41 (1882); *Peo-*

---

[2] In *Taylor* then Chief Justice T. E. Brennan discusses conditions under which direct appeal to the appeal court and commencement by motion in the trial court might be proper.

[3] The course of review which the defendant followed in *In re Valle*, 364 Mich 471 (1961) is not altogether clear. He filed a petition for habeas corpus with this Court, with an ancillary writ of certiorari to the trial court.

*ple* v *Coveyou,* 48 Mich 353 (1882) ; *People* v *Lepper,*
51 Mich 196 (1883) ; *People* v *Ellsworth,* 68 Mich
496 (1888)—voluntariness plus statutory construc-
tion. *Bayliss* v *People,* 46 Mich 221 (1881) is inter-
esting because on the question of voluntariness, a
writ of *certiorari* was issued to trial judge and he
made a return on the extent of investigation he
made, showing that the case might well have begun
there. There were other assigned errors. The re-
cent order in *Carlton* instead of considering the
merits on appeal, as these cases do, remanded the
merits to the trial court.

We hold all cases that involve showing matters
not already on the record such as cases claiming in-
voluntary pleas based on alleged beatings or induce-
ments must first be brought to the trial court for re-
view. *Carlton* is authority for this and overrules,
if *sub silentio,* the earlier cases following a different
practice.[4]

In addition to these cases involving testimony not
on the record there is a strong practice of bringing
cases for review of guilty plea decisions first to the
trial court, although there are some that have been
brought first to the Court of Appeals.

*Bumpus* suggests another group of cases where
the review was started in the trial court. There are
several that raise the constitutional question of
right to counsel along with the question of whether
the plea was "understandingly" given. *People* v
*Dunn,* 380 Mich 693 (1968)—right to counsel and un-
informed as to nature of accusation. *People* v *Ves-
ter,* 309 Mich 409 (1944)—right to counsel and mis-
understanding of legal elements of crime. These
cases involve questions on the record.

There are at least three other cases where the
issue should appear on the record. In *People* v

---

[4] See *Edwards, Henning, Clark* and *Ferguson, supra.*

*Lang,* 381 Mich 393 (1968) the question was one of statutory interpretation of the right of a parole board to "flop" the defendant in an indeterminate sentence after parole revocation. In *In re Palmer,* 371 Mich 656 (1963) and *People* v *Parshay,* 379 Mich 7 (1967) the question was simply whether the defendant was informed as to his constitutional right to counsel. In *People* v *Ferguson,* 383 Mich 645 (1970), the defendant alleged he was uninformed as to the maximum penalty.

There are two cases raising the same question as the case at bar, namely did the trial court investigate the truth of the plea, in which the review was initiated in the trial court. The first is the lead case in the field, *People* v *Barrows,* 358 Mich 267 (1959). The question of whether the trial court made a satisfactory investigation is, of course, a matter on the record. The second case is *People* v *Stearns,* 380 Mich 704 (1968). There in addition to the question of the court satisfying itself as to the truth of defendant's guilty plea were questions of right to appointed counsel and understanding of the accusation. A somewhat similar case is *People* v *Merhige,* 212 Mich 601 (1920). There the claimed error was that the defendant did not really plead guilty, and that the judge should have recognized he really was not guilty and should have so advised him.

There are also a few modern cases that were brought directly in the appellate court. *People* v *Jaworski,* 387 Mich 21 (1972) and *People* v *Butler,* 387 Mich 1 (1972) involve failure of the plea-taking court to advise as to constitutional rights. *People* v *Hobdy,* 380 Mich 686 (1968) relates to no express waiver of counsel. *People* v *Dudley,* 173 Mich 389 (1912) challenged the jurisdiction of the plea-taking court and the constitutionality of the

probation statute. *People* v *Fisher*, 237 Mich 504 (1927) raised the statutory interpretation question as to whether on revocation of probation the court could sentence to 7–12 months after having imposed a fine as a condition of probation.

There are two interesting cases used by the Court of Appeals to preclude filing of claims of appeal from revocation of probation.[5] The people's brief also states "Neither can there be a direct appeal of probation violation and consequent revocation: *Calhoun* v *Macomb Circuit Judge* (1968), 15 Mich App 416, 422–423. This was fortified by *People* v *Stanley* (1969), 18 Mich App 596, 597." In both cases appeal as of right was denied and in *People* v *Dixon*, 18 Mich App 591–592 (1969), the Court said " * * * judgments entered after probation revocation are not appealable as of right * * * " citing *Calhoun*. In *Calhoun* the Court said there was an appeal as of right but it must be within 60 days after being placed on probation (15 Mich 416–417).

Upon consideration of all of these cases, we find

[5] One of these cases, *Calhoun* v *Macomb County Judge*, 15 Mich App 416 (1968) was referred to in a letter from the Assistant Clerk of the Court of Appeals concerning the instant case:
        "May 29, 1969
"Mr. Carl Levin
Defender's Office
600 Penobscot Building
Detroit, Michigan 48226
"Re: People vs. Robert Taylor
        Recorder's Court #A101483
"Dear Mr. Levin:
We are returning herewith a claim of appeal which you have submitted in the above cause. We advise you that there is presently pending in this Court an application for delayed appeal which was filed by the defendant in pro per. In addition, we advise you that under the decision of this Court in *Memory Calhoun* v. *Macomb County Judges*, [sic] #4400, a judgment of probation violation is not appealable as a matter of right.
                "Yours truly,
                "James O. Devereaux, Jr.
"cc: Samuel Torina
JOD/jl"

that commencing post plea review of guilty pleas in
the trial court is the preferable policy.

Such review by motion has the advantage of giv-
ing the trial judge the opportunity to consider
whether or not his prior and complained of action
was correct or not, and, if not, to take necessary steps
to correct it. Such steps probably would be to vacate
the sentence and permit the withdrawal of the plea
and proceed afresh. Not only would the trial judge
have the opportunity to consider whether or not his
action was correct, as he would when a trial ruling
was objected to, but the appellate court would receive
the case similar to a trial case after the trial court
had ruled on a specific exception with adversary
arguments if necessary.

Such review by motion at the trial court level
would have the additional benefit of being brought
before the original trial court without the delay and
expense of initiating appellate procedures.

Beneficial as commencement of review in the trial
court may be, there are certain obvious cases where
doing so would be futile and non-productive. Where
for example the basis for review has already been
brought to the attention of the trial judge and he has
ruled on it adversely or has on the record refused to
consider it, it would be a patent waste of time and
a useless act to require the defendant to bring the
matter to the attention of the trial court again.

With the exception of such cases as the foremen-
tioned we hold that proper procedure requires com-
mencing post plea review in the trial court.

This returns consideration of correction of error,
if that is appropriate, or the withdrawal of the guilty
plea after sentence, to the sound discretion of the
trial court. *People* v *Vasquez,* 303 Mich 340, 342
(1942); *People* v *Goldman,* 245 Mich 578, 583–584
(1929). Furthermore, in addition to fundamental

fairness to the trial court and economy and speed of operations, this will permit the trial court, if it determines that is proper, to vacate the plea and set a speedy date for trial.

One further point in passing. The motion in the trial court to review the taking of the guilty plea is not a substitute for defendant's constitutional appeal as a matter of right. Const 1963, art 1, § 20. If the trial court denies the motion to review or vacate, then the appeal as a matter of right lies if the proper steps are taken. As already indicated such a motion should often obviate the necessity for an appeal as of right because the trial court in many instances will be able to correct the alleged error or vacate the plea.

The review in the instant case more properly should have been begun in the trial court. However, since it has already been argued in two courts, since heretofore there has been no definitive opinion from this Court on the proper practice, and since it would work an injustice on the defendant to be remanded to the trial court at this point without consideration of the merits, we will exercise our inherent right to review *sua sponte*. *People* v *Dorrikas,* 354 Mich 303 (1958); *People* v *Farmer,* 380 Mich 198 (1968).

### II.—*Did the Trial Judge Meet the Standards of Barrows?*

The critical language of *People* v *Barrows,* 358 Mich 267, 272 (1959) is as follows:

"The direct questioning of a defendant by the trial judge on plea of guilty is required by the rule for the purpose of establishing the crime and the participation therein of the person pleading guilty."

The whole transcript pertinent to defendant Robert Taylor is set out below:

*"The Court:* The People vs. Sylvester Harris, Robert Taylor and Harold Jenkins, breaking and entering a business place in the night time with intent to commit larceny.

*"Mr. Flanigan [assistant prosecutor]:* I move to add a count of breaking and entering in the daytime.

*"The Court:* Motion granted.

\*    \*    \*

*"Mr. Gillis [attorney for defendant]:* Your Honor, I have discussed this matter with Mr. Taylor, advised him of his right to trial by jury or by the Court if he wishes. I have also advised him of the maximum penalties involved on the charge of breaking and entering in the daytime and after full discussion he has advised me that he wishes to withdraw his plea of not guilty and enter a plea of guilty to the added count.

*"The Court:* Is that all right with the prosecutor?

*"Mr. Flanigan:* Yes, your Honor.

*"The Court:* Robert Taylor, you want to plead guilty of breaking and entering a business place in the daytime with the intent to commit larceny?

*"The Defendant:* Yes.

*"The Court:* Your plea of guilty is free and voluntary?

*"The Defendant:* Yes.

*"The Court:* No one has promised you anything?

*"The Defendant:* No.

*"The Court:* No one has induced you to plead guilty?

*"The Defendant:* No.

*"The Court:* You are pleading guilty because you are guilty?

*"The Defendant:* Yes.

*"The Court:* Your plea of guilty is of your own free will?

*"The Defendant:* Yes.

*"The Court:* What?

*"The Defendant:* Yes.

*"The Court:* I will accept the plea of guilty of breaking and entering a business place in the daytime with intent to commit larceny. Refer to Clinic and Probation Department. Sentence, two weeks from today."

The most apposite language in the plea-taking hearing presents us with: *"The Court:* You are pleading guilty because you are guilty?

The trial court as the transcript shows made a reasonable effort according to the standards of the day to "ascertain that the plea was freely, * * * and voluntarily made, without undue influence, compulsion, or duress, and without promise of leniency".[6] On the question of "understandingly"[7] the procedure is less satisfactory.

The provision that "the court shall examine the accused * * * and * * * shall ascertain that the plea was * * * understandingly * * * made"[8] requires the judge to conduct such an examination as to show that what the defendant actually did was indeed a crime or otherwise he could not understandingly plead guilty. If what he did was actually not a crime, then if he pled guilty to it, it would not be an understanding plea.

In the instant case the judge's examination so far as the record shows was to ascertain "You are pleading guilty because you are guilty?" This puts the burden on the defendant to know whether indeed he was legally guilty, and of what,[9] and he might well

---

[6] Court Rule No 35A § 2 (1945).

[7] *Id.*

[8] *Id.*

[9] The necessity of such examination of the defendant by the trial judge, is evident from the surprises it often turns up. See, for instance, the record of a guilty plea proceeding in another case recently decided by this Court:

*"The Court:* All right.

"Let me see if you are really guilty of anything. Before I can accept your plea, I have to know whether you are guilty of anything,

not understand.   See *People* v *Merhige,* 212 Mich 601
(1920).   See also assertions in a recent newspaper
article, for example, that defendants plead guilty in
Wayne County although they believe they are in-
nocent just to get out of the jungle that is the Wayne
County jail.   (Detroit Free Press, October 10,
1971.)

In any event it is the court's duty to ascertain by
its examination facts which would convince the court
that indeed a crime had been committed by the de-
fendant.[10]   Such examination is not the equivalent

---

so tell me where were you on this day and where did you actually
take a 1965 Volkswagon?
    *"The Defendant:* Yes.  Well, your Honor, it was about four o'clock
in the morning and it was on Edwards, close to Home Avenue.
    *"The Court:* That's in the City of Flint?
    *"The Defendant:* Yes.
    *"The Court:* All right.  Go ahead.
    *"The Defendant:* And I went and I started it and I drove it
away.
    *"The Court:* Let me ask you, was the key in the car?
    *"The Defendant:* No, your Honor.
    *"The Court:* How did you get it started?
    *"The Defendant:* With a different ignition.
    · *"The Court:* What do you mean with a different ignition?  How
could you—You mean you took one motor out and put another motor
in?
    *"The Defendant:* No, the ignition switch on the switch—
    *"The Court:* Well, how did you do that?
    *"The Defendant:* Well, I had a—I have a Volkswagon, and I
lifted up the hood and put the three prongs on it and started it.
    *"The Court:* Oh, you own a Volkswagon yourself?
    *"The Defendant:* Yes, your Honor.
    *"The Court:* I see.  And you drove this around and then what
did you do?
    *"The Defendant:* I changed license plates on it, and I towed—
    *"The Court:* Towed?  T-o-w — the car away?
    *"The Defendant:* Towed mine out into Clio to a farm.
    *"The Court:* In other words you were switching automobiles?
    *"The Defendant:* Yes, your Honor.
    *"The Court:* Actually, you are really guilty of the higher offense,
but the Court will accept your plea to the lesser offense.  Now,
young man, has this been the first time you have ever been in court
as an adult, in Circuit Court?" *Genesee Prosecutor* v *Genesee Circuit
Judge,* 386 Mich 672 (1972).
    [10] It is not sufficient that such facts appear on the record of the
preliminary examination.  See *People* v *Zaleski,* 375 Mich 71, 81
(1965) and *People* v *Rufus Williams,* 386 Mich 277, 284–285 (1971).

of a legal trial but it must objectively indicate that the court had fulfilled this obligation.

Since the record as presented does not show the necessary examination, the defendant's plea of guilty is vacated and this case is remanded to the trial court for appropriate proceedings.[11]

Reversed and remanded for appropriate proceedings.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH and SWAINSON, JJ., concurred with WILLIAMS, J.

ADAMS, J., concurred in the result.

BLACK, J. (*dissenting*). The Court's opinion, standing as typical these days for reversal of another order denying another belated application by another professional felon for review of his *original* conviction (March 14, 1960), was delivered to the writer December 9, 1971.

When a Justice dissents, he is required to "give in writing the reasons for his dissent". (Const 1963, art 6, § 6.) I do so regularly with detail, having found it progressively necessary in recent years; most certainly in this about-to-end year 1971. However, and since advent of the present constitution, we have construed and applied the quoted language as authorizing for cases as at bar a summary negative statement of reason. That is what Division 2 has done here (Court of Appeals order of June 4, 1970, the language of which is):

"It is ordered that the application for delayed appeal be and the same is hereby denied for lack of merit in the grounds presented;".

---

[11] In passing, this Court is not satisfied that the matter of whether the defendant waived his right to jury trial is worth considering on the merits.

Now that the instant appeal has been submitted and the trifling nature thereof fully exposed, I propose this time to eliminate mercifully from our printed pages still another lengthy exercise in futility. When a clear majority literally pants to vote a new round of hearings and appeals for a criminal prosecution originating more than 12 years ago,[*] thus setting up another precedent for more like-delayed frivolity, it would be quite bootless to write for this appeal any statement of reasons over and above that which Court of Appeals Judges QUINN, BRONSON, and McGREGOR have recorded.

I vote to affirm and therefore dissent.

T. E. BRENNAN, J., concurred with BLACK, J.

---

[*] For enough of the details of defendant's adventures and misadventures with the law, see the majority opinion, *ante* at 213.