PEOPLE v PURDY

PEOPLE v JOHNSON

OPINION OF THE COURT

1. CRIMINAL LAW—PLEA OF GUILTY—CONFRONTATION RIGHT—FAILURE
TO APPRISE.

A trial judge's statement to defendants that they didn't have to
go to trial alone, that they could go to trial with their lawyers,
that the lawyers would help them in a lot of ways by question-
ing the witnesses for them and by subpoenaing witnesses in
their behalf, and that the lawyers could make legal arguments
for them, could argue their cases to the jury, and could give
them advice and help them in a lot of ways, was not sufficient
to inform defendants of their right to confront their accusers.

DISSENT BY V. J. BRENNAN, J.

2. CRIMINAL LAW—PLEA OF GUILTY—SUFFICIENCY OF QUESTIONING—
RIGHT OF CONFRONTATION

*A trial judge who had carefully and methodically taken guilty
pleas properly advised defendants of their right to examine
their accusers and of their various other rights at the time of
the plea where he asked the defendants, who had their attor-
ney present, among other things, whether or not they under-
stood what a jury trial was, if they ever had an opportunity to
observe a jury trial in progress, and if they knew that they or
their lawyers could question the witnesses and whether or not
they knew they could subpoena witnesses on their own behalf;
the defendants answered the questions in the affirmative point-
ing out they had participated before as witnesses in a trial and
that they had some experience themselves with trials and
courts in that they had previous police records; also, the judge
in his very direct and intensive examination, which was in*

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 21 Am Jur 2d, Criminal Law § 484 *et seq.*
[4] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent
Children §§ 4, 8.

*question and answer form, explained that many cases which are tried before a jury result in acquittals and after the defendants explained step by step their part in the crime he again asked the defendants if they still wished to plead guilty to which they answered yes.*

3. CRIMINAL LAW—PLEA OF GUILTY—WITNESSES—ACCUSERS—EXAMINATION.

   *A blackboard with drawings is not necessary to point out to defendants who are represented by able counsel during the taking of a guilty plea that when the court advised them that they and their counsel may examine witnesses that this means in effect accusers; it must be clear to all involved, especially to defendants with experience in the courts, that accusers are witnesses and accusers have to be witnesses.*

4. CRIMINAL LAW—SENTENCING—JUVENILE RECORD.

   *A trial judge's use of defendant's juvenile records before imposing sentence was proper, because a sentencing judge needs to know the entire character and personality of a person he is attempting to place under some supervisory control for possible rehabilitation.*

Appeal from Recorder's Court of Detroit, John R. Murphy, J. Submitted Division 1 February 15, 1973, at Detroit. (Docket Nos. 14414–14415.) Decided April 25, 1973.

Marvin Purdy and Cedric L. Johnson were convicted, on their pleas of guilty, of assault with intent to rob being armed. Defendants appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

*Robert W. Stern,* for defendant Purdy on appeal.

*Barry E. Solomon,* for defendant Johnson on appeal.

Before: LESINSKI, C. J., and R. B. BURNS and V. J. BRENNAN, JJ.

LESINSKI, C. J. On March 6, 1972 defendants Purdy and Johnson pleaded guilty to assault with intent to rob being armed in Detroit Recorder's Court. MCLA 750.89; MSA 28.284. Both defendants now appeal their convictions by right alleging that the trial court did not inform them of their right to confront their accusers. Defendants' allegations are sound, and therefore we reverse.

An examination of the guilty plea transcript reveals the following exchange between the trial judge and the defendants with regard to their right of confrontation:

*"The Court:* Do you know that if you had a trial you wouldn't have to go [to] trial alone. You could go to trial with your lawyer and he could help you in a lot of ways. He could question the witnesses for you and subpoena witnesses in your behalf. Did you know about that, Mr. Purdy?

*"Mr. Purdy:* Yes.

*"The Court:* He can make legal arguments for you and argue your case to the jury and give you advice and help you in a lot of ways. Do you understand that, Mr. Johnson?

*"Mr. Johnson:* Yes.

*"The Court:* Do you Mr. Purdy?

*"Mr. Purdy:* Yes."

This Court has held the above language is not sufficient to inform a defendant of his right to confront his accusers. *People v D'Argis,* 44 Mich App 186 (1972). Accordingly, we must reverse each defendant's conviction and remand for a new trial.

We also note that the trial judge examined each defendant's juvenile record at sentencing. In view of our reversal of the convictions we do not consider this assignment of error. See *People v McFarlin,* 41 Mich App 116 (1972); *People v Chappell,* 44 Mich App 204 (1972).

The issue is now before the Supreme Court. Leave was granted in *McFarlin, supra,* August 8, 1972. Thus, on remand, if defendants should again be found guilty, the trial court should abide by the decision of the Supreme Court on the use of juvenile records at sentencing.

Reversed and remanded.

R. B. BURNS, J., concurred.

V. J. BRENNAN, J. *(dissenting).* The defendants herein pled guilty before a Detroit Recorder's Court judge to the offense of assault with intent to rob being armed (MCLA 750.89; MSA 28.284) an included offense to the original charge against them of robbery armed. This plea was taken on March 6, 1972; from that plea both defendants appeal claiming they were not properly advised of various rights at the time of the plea, more particularly, their right to examine their accusers.

I cannot concur in my brothers' opinion; I would affirm the conviction.

I have examined the 22 pages of plea transcript in this matter. The plea was very carefully and methodically taken by the trial judge. The defendants had their attorney present; the court asked them, among other things, whether or not they understood what a jury trial was and they answered in the affirmative. The court asked them if they ever had an opportunity to observe a jury trial in progress and they answered in the affirma-

tive; not only had they observed them, they had participated as witnesses. Defendants further pointed out that they had some experience themselves with trials and courts in that they had had previous police records.

The court in its very direct and intensive examination, which was in question and answer form, explained that many cases which are tried before a jury result in acquittals. They explained to the judge, step by step, their part in this crime. After this entire discourse, the court again asked the defendants if they still wished to plead guilty at which time they answered yes.

But, more particularly, in answer to their claim of error, the court asked the defendants if they knew that they or their lawyers could question the witnesses and whether or not they knew they could subpoena witnesses on their own behalf. They answered yes to both parts of that question.

I don't think a blackboard with drawings is necessary to point out to defendants who are represented by able counsel that when the court advised them that they and their counsel may examine witnesses that this means in effect accusers. It must be clear to all involved, especially those with experience in the courts, as these defendants were, that accusers are witnesses and accusers have to be witnesses. I am afraid that my colleagues have attempted a play on semantics in allowing these two armed robbers' release by a very, very technical reading of the cases and rules.

The defendants also cite as error the court's use of their juvenile records before imposing sentence. I have written to this in the past and my position has been clearly stated, which is, briefly, that I feel a sentencing judge needs to know the entire character and personality of an individual he is

attempting to place under some supervisory control for possible rehabilitation. See *People v Luster,* 44 Mich App 38 (1972).